Filed 5/13/16  Mani Investments v. Harouche CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MANI INVESTMENTS et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MICHEL HAROUCHE et al.,<br><br>    Defendants and Respondents. | B263486<br><br>(Los Angeles County<br>Super. Ct. No. BC514710) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Marc E. Rohatiner and Eric Levinrad for Plaintiffs and Appellants.

Greenberg Glusker Fields Claman & Machtinger, Ricardo P. Cestero and Daniel G. Stone for Defendants and Respondents.

———————————

Plaintiffs and appellants Mani Investments, LLC (Investments) and Simon Mani (Mani) (collectively, appellants) appeal a postjudgment order granting a motion to amend a judgment obtained by defendants and respondents Michel Harouche and Kathy Harouche (hereafter, Harouche). The amended judgment adds Mani, an individual, as an additional judgment debtor liable for Harouche's attorney fees.

We perceive no abuse of discretion in the trial court's decision naming Mani as an additional judgment debtor and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Investments and Harouche were equal members of HMS Air, LLC (HMS), a limited liability company which owns and operates a Gulfstream aircraft. On March 8, 2007, Investments and Harouche executed an operating agreement for HMS. The HMS operating agreement included an attorney fee provision entitling the prevailing party to recover attorney fees in any dispute among the members of HMS, or between HMS and its members.

On January 28, 2013, Investments sued Harouche in the superior court (*Mani I*), alleging that Harouche breached the HMS operating agreement by refusing to consent to Investments' transfer of its ownership interest in HMS. On July 10, 2013, Investments filed a second action against Harouche and his wife Kathy (*Mani II*) (the instant action), alleging a single cause of action for fraudulent conveyance.

Harouche filed motions for summary judgment in both cases. On September 25, 2013, Harouche filed a motion for summary judgment in *Mani II*. On December 10, 2013, Harouche filed a motion for summary judgment in *Mani I*. Investments dismissed *Mani I* on January 28, 2014, the day its opposition to the summary judgment motion was due. Investments dismissed *Mani II* on April 16, 2014, the day after its opposition to the motion for summary judgment in that case was due.

On July 23, 2014, in *Mani II*, the trial court awarded Harouche $50,000 in attorney fees incurred in that action. After the trial court issued its ruling, Harouche's attorney called Investments' counsel to inquire regarding payment of the $50,000 award.

2

Investments' counsel responded that Investments "has no assets and therefore could not pay the award."

On February 23, 2015, Harouche filed a motion in *Mani II*, the instant action, to amend the judgment to add Mani as a judgment debtor liable for the $50,000 award. Harouche also requested an additional $22,531.25 in attorney fees which were incurred to collect on the judgment. The motion was based on Code of Civil Procedure section 187,[1] which authorizes the trial court to amend a judgment to impose liability upon an alter ego of the judgment debtor.

Harouche contended there was a unity of interest and ownership between Investments and Mani, Investments did not observe corporate formalities and does not have any bank accounts or liquid assets, all of Investments' expenses (including litigation expenses) were paid by Mani from his personal account, Mani controlled the litigation from the outset, and in all respects, Investments and Mani were one and the same.

In opposition to Harouche's motion to amend the judgment, Investments and Mani denied that Mani is the alter ego of Investments and argued: limited liability companies legitimately shield owners from liability and may only be disregarded under exceptional circumstances; Harouche failed to establish a unity of interest between Mani and Investments; Harouche failed to show that denial of the motion to amend the judgment would produce an inequitable result; and alter ego liability is inappropriate where, as here, Harouche voluntarily chose to contract with Investments, not with Mani individually.

On March 26, 2015, after hearing the matter, the trial court granted Harouche's motion, stating: "I've been convinced that equity is on the defendant's side to grant the motion to amend the judgment, that basically Mani Investments filed this lawsuit, or [at] least it was filed under the name of Mani Investments. [¶] Mr. Mani was the person who decided – and obviously companies don't decide on their own. Individuals decide for

---

[1]     All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

3

companies. But Mr. Mani personally paid the bills of this lawsuit, including the bills to his attorneys. And then in effect he was the one who chose to file the lawsuit. . . . [¶] If Mr. Mani is going to fund this lawsuit and pay for his attorney to file the lawsuit, he ultimately will pay the . . . fees for the attorney on the other side when the Court finds that there should be attorney's fees awarded. [¶] Otherwise, we'd get to the situation, had there been a discovery dispute, for instance, and the Court awarded sanctions against . . . Mani Investments[, it] would never have to pay the sanctions because it has no money, and the Court would have its hands tied. It couldn't go to Mr. Mani to get the . . . sanctions paid. And I think that would be an unjust result also. [¶] Weighing these issues -- and I do believe it's not a clearcut case -- I believe the equities do lie on the defendant's side. And after hearing the argument and reading the briefs of both sides, the Court is going to grant the motion to amend the judgment."

On April 17, 2015, after the hearing but before the trial court issued its written ruling, Investments and Mani filed a premature but timely notice of appeal. (Cal. Rules of Court, rule 8.104(d).) On June 10, 2015, the trial court entered an order granting Harouche's motion to amend the judgment to add Mani as a judgment debtor, and awarding Harouche additional attorney fees and costs against both Investments and Mani in the amount of $18,531.25. We construe the notice of appeal to refer to said order.

## CONTENTIONS

Appellants contend: the imposition of alter ego liability is an extreme remedy which is only appropriate in extraordinary circumstances not present here; and Harouche failed to meet his burden to establish that Mani is the alter ego of Investments.[2]

---

[2] Appellants do not challenge the award of $18,531.25 in postjudgment attorney fees and costs.

4

# DISCUSSION

1. *Standard of appellate review.*

Appellants acknowledge the decision to amend a judgment to add a judgment debtor lies within the sound discretion of the trial court, and that factual findings necessary to the trial court's decision are reviewed to determine whether they are supported by substantial evidence. (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1189; *McClellan v. Northridge Park Townhome Owners Assn.* (2011) 89 Cal.App.4th 746, 751-752 (*McClellan*).)

2. *Trial court's jurisdiction to amend judgment to name additional judgment debtors.*

Pursuant to section 187, a trial court has jurisdiction to modify a judgment to add additional judgment debtors. (*McClellan*, *supra*, 89 Cal.App.4th at p. 752.) Section 187 grants to every court the power to use all means to carry its jurisdiction into effect, even if those processes are not set out in the code. (*Ibid.*) Section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

Utilizing section 187, "judgments are typically 'amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. [Citations.] This is an equitable procedure based on the theory that the court is not amending the judgment to add a new [party] but is merely inserting the correct name of the real [party]. [Citations.] 'Such a procedure is an appropriate and complete method by which to bind new [individuals] where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." [Citation.]' [Citations.]" (*McClellan*, *supra*, 89 Cal.App.4th at p. 752.)

5

To recover on an alter ego theory, two requirements must be satisfied: (1) there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow. (*Automotriz Del Golfo De California S. A. De C. V. v. Resnick* (1957) 47 Cal.2d 792, 796 (*Automotriz*); *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 (*Leek*).)

The factors to be considered in applying the alter ego doctrine include " ' "[c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . . ; . . . the treatment by an individual of the assets of the corporation as his own . . . ; . . . the failure to obtain authority to issue stock or to subscribe to or issue the same; . . . the holding out by an individual that he is personally liable for the debts of the corporation . . . ; the failure to maintain minutes or adequate corporate records . . . ; . . . sole ownership of all of the stock in a corporation by one individual or the members of a family . . . ; . . . the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . . ; . . . the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . . ." ' " (*Leek*, *supra*, 194 Cal.App.4th at p. 417.) These factors are not exhaustive and the enumerated factors may be considered among others under the particular circumstances of each case. (*Id*. at p. 418.)

3. *Trial court properly exercised its discretion in amending the judgment to add Mani as a judgment debtor*.

Mani's testimony at his judgment debtor examination disclosed the following: Mani is the sole member of Investments, and is also its manager. Investments is a single purpose entity. Investments' only property is its membership interest in HMS, through which it has a 50 percent interest in the airplane.

Mani further testified: Investments does not have any cash in its possession. Investments has never had a bank account in its name. Investments' monthly expenses

6

(such as maintenance, upkeep, and costs associated with the airplane) are paid by Mani himself, from his personal account, which he pays directly to HMS. In the instant litigation, filed by Investments against Harouche, Investments' attorney fees were paid by Mani. Mani testified, "if HMS needs some money, we wire it from one of my personal accounts."

Further, no promissory notes exist between Investments and Mani, and Mani did not know of any documents evidencing loans by Mani to Investments. The expenses that Mani pays on Investments' behalf are not a loan; Mani testified that Investments has no liabilities apart from what it owes HMS.

Mani also admitted that Investments had never conducted meetings at which minutes were taken, and as far as Mani knew, Investments did not have any books or records.

Other relevant evidence in the record, apart from Mani's testimony at the judgment debtor examination, includes a copy of Mani's personal verification of Investments' discovery responses in this litigation, dated January 14, 2014. On the verification form, Mani verified Investments' responses to a request for production of documents as "a *party* to this action" (emphasis added), as opposed to a representative of a party.[3]

In view of all the above, the trier of fact properly could determine that there is a unity of interest between Mani and Investments, such that Mani is the alter ego of Investments. We note in particular the financial arrangements between Mani and Investments, which has no financial accounts. Instead, all of Investments' expenses are paid by Mani personally, out of his own accounts, and without any reimbursement by

---

[3]     We note the declaration of Mani's attorney, filed in opposition to the motion to amend the judgment, asserted the designation of Mani as a party to the action "was the result of my error in preparing the verifications and was not a conscious decision on [Simon] Mani's part to assert that he and [Investments] were one [and] the same." However, Mani did not move to amend the verification form on the ground of mistake, inadvertence or excusable neglect. (§ 473.)

Investments. Mani pays HMS directly for the monthly upkeep of the airplane. Mani also has directly paid the attorney fees billed by Investments' counsel in this litigation.

Other pertinent factors include the undercapitalization of Investments, which has zero funds from which to pay its expenses. There is the admitted failure of Investments to maintain minutes or corporate formalities. Also, Investments is a single purpose entity, with a single member, and it exists solely to hold an interest in HMS. Further, Mani has held himself personally liable to Investments' creditors, namely its legal counsel as well as HMS, for Investments' debts. (See *Leek*, *supra*, 194 Cal.App.4th at p. 417)

The totality of these circumstances show "such unity of interest and ownership that the separate personalities" (*Automotriz*, *supra*, 47 Cal.2d at p. 796) of Investments and Mani do not exist. Further, because Mani, the newly added judgment debtor, funded this litigation, Mani " 'controlled the litigation, [and] thereby . . . had the opportunity to litigate, [so as] to satisfy due process concerns.' " (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc*. (2013) 217 Cal.App.4th 1096, 1106.)

In an attempt to show the separateness of Investments and Mani, appellants emphasize that Investments and Mani have not commingled their funds. However, the reason that funds were not commingled is that Investments has no financial accounts of its own. Instead, Mani directly pays all of Investments' obligations out of his own accounts. It is unclear how there could be a greater unity of interest and ownership between Mani and Investments. Appellants also argue that Investments was not formed with a fraudulent intent. However, fraudulent intent is not required for application of the alter ego doctrine. (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1074.) Appellants also stress that Mani did not siphon assets from Investments for his personal use; to the contrary, over the years Mani has made millions of dollars in capital contributions to Investments to enable Investments to meet its financial obligations, including $813,000 in 2013 alone. The argument is unavailing because the relevant inquiry is whether there is

8

substantial evidence to show a unity of interest and ownership between Investments and Mani. As discussed, the evidence in that regard is abundant.[4]

Finally, the trial court properly concluded that denial of the motion to amend the judgment to add Mani as a judgment debtor would lead to an inequitable result. (*Automotriz*, *supra*, 47 Cal.2d at p. 796.) Mani has undercapitalized Investments, which does not even have a bank account, and thereby has rendered Investments incapable of paying any of its expenses. Instead, Mani has undertaken to pay all of Investments' expenses, except for the attorney fees which Investments owes to Harouche. As the trial court found, Mani cannot pick and choose which of Investments' expenses he will pay. Mani, through Investments, initiated and prosecuted a failed lawsuit against Harouche. The litigation resulted in a $50,000 award of attorney fees to Harouche as the prevailing party, pursuant to the parties' operating agreement. Had Investments been the prevailing party, it would have recovered damages as well as attorney fees against Harouche. Under these circumstances, it would be inequitable to permit Mani to escape his attorney fee obligation under the fiction that Harouche must look to Investments alone to collect the $50,000 fee award.

---

[4] Appellants' arguments that Harouche voluntarily contracted with Investments, not with Mani individually, and that Harouche's difficulty in enforcing the judgment against Investments does not warrant the imposition of alter ego liability, likewise do not meet the issue.

## DISPOSITION

The June 10, 2015 postjudgment order, which amended the judgment to name Simon Mani as an additional judgment debtor and awarded an additional $18,531.25 in attorney fees and costs to Harouche, is affirmed. Harouche shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:


LAVIN, J.


HOGUE, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.